**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| TQP DEVELOPMENT, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 2:12-CV-180-WCB |
| | § § | |
| INTUIT INC., | § § | |
| Defendant. | § § | |

| | | |
|---|---|---|
| TQP DEVELOPMENT, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 2:13-CV-219-WCB |
| | § § | |
| CHRYSLER GROUP LLC, | § § | |
| Defendant. | § § | |

**<u>ORDER</u>**

Before the Court are the parties' briefs on claim construction (Case No. 2:12-cv-180, Dkt. Nos. 114, 122, 125; Case No. 2:13-cv-219, Dkt. Nos. 142, 147, 150). The briefs identify four claim construction issues that are still in dispute between the parties. Those four issues will be addressed in this Order. A fifth claim construction issue arose in the course of the briefing and argument of the motion for summary judgment of non-infringement filed by the defendants in Case No. 2:12-cv-180. That issue will be addressed in a separate order.

1

Each of the contested terms has been construed previously in one or more of the prior cases in this district involving the same patent, U.S. Patent No. 5,41,730 ("the '730 patent"). For each disputed term, the defendants are asking this Court to adopt a construction that is contrary to the construction adopted in one or more of the previous cases. As the Court explained to the parties at the claim-construction hearing held on February 7, 2014, the Court does not regard itself as legally bound by those prior decisions, but it regards those decisions as being entitled to substantial weight under principles of *stare decisis*.

**1. "Providing a Seed Value to Both Said Transmitter and Said Receiver"**

The defendants first contend that the term "providing a seed value to both said transmitter and said receiver" in the first limitation of independent claim 1 must be construed to require, in the case of the transmitter, that the seed value be provided from a source external to the transmitter. The defendants rely mainly on the use of the preposition "to" in that limitation, which they argue indicates that the seed value must be provided to the transmitter from a source outside the transmitter, rather than being provided to the transmitter from some component within the transmitter itself. While the colloquial understanding of the phrase "providing to" may suggest provision from an external source, there is little else in the claims or the specification of the patent that supports that restrictive construction. To the contrary, the specification describes an embodiment in which the seed value is provided to the pseudo-random number generator in the transmitting station from a "key memory." '730 pat., col. 9, ll. 51-55. The "key memory," in turn, is depicted in Fig. 4 of the patent as being part of the transmitting station. Thus, that embodiment makes it clear that the seed value is "provided to" the transmitter from a component that is not outside the transmitter, but is in fact part of the transmitter.

The defendants argue that the seed value is only stored temporarily in the key memory and must be generated outside the transmitter. But that argument misses the point. The embodiment in which the seed value is "provided" by the key memory to the pseudo-random number generator illustrates that key values can be provided to the receiver not only from external sources, but from internal sources as well. The fact that the key memory does not itself generate the seed value does not mean that it cannot "provide" the seed value to the receiver at the appropriate time, even in instances where the key memory may have originally received the seed value from an external source. Although the defendants seek support from the specification's statement that the key memory "can be loaded either from a remote (host) station or by a local command," '730 patent, col. 10, ll. 29-33, nothing in the specification indicates that a "local command" could not be issued by a component within the transmitter itself.

Furthermore, the defendants' proposed construction creates difficult problems associated with defining the boundaries of the claimed transmitter so that a jury could determine whether a particular seed-providing component should be considered inside or outside of an allegedly infringing transmitter. Nothing about the patent claims or the specification suggests that the source of the seed value, the relative location of the source of the seed value, or the precise boundaries that define the transmitter (or the receiver) are material to the invention. Instead, the '730 patent merely seeks to ensure that the transmitter and receiver—however defined—start with identical seed values.

The Court therefore construes the limitation "providing a seed value to both said transmitter and receiver" to mean **"providing the same seed value to both said transmitter and receiver"** without the added requirement that the seed value be provided from an external

source. That construction is consistent with the court's constructions in *TQP Development, LLC v. Merrill Lynch & Co.*, No. 2:08-cv-471, Dkt. No. 383, at 17; *TQP Development, LLC v. Ticketmaster*, No. 2:09-cv-279, Dkt. No. 232, at 11; *TQP Development, LLC v. 1-800-Flowers.com, Inc.*, 2:11-cv-00248, Dkt. No. 226, at 17; and *TQP Development, LLC v. Wells Fargo & Co.*, 2:12-cv-61, Dkt. No. 187, at 29.

### 2. "Block"

Next, the defendants argue that the term "block," as used in the preamble phrase "data comprising a sequence of blocks" and the phrase "a predetermined number of said blocks," means a group of bits longer than a byte. TQP argues that a "block" is simply a term for a unit of data and can consist of a single eight-bit data byte. Again, the patent contains little textual support for the defendants' construction. The defendants rely on a portion of the specification that refers to the "block counter," which counts "the number of bytes (characters), words or blocks of data being transmitted." '730 patent, col. 3, ll. 20-21. According to the defendants, that phrase shows that the patentee considered bytes to be a separate class from blocks and that blocks are larger than the two preceding terms in the phrase, "bytes" and "words." Nothing about that phrase, however, alters the plain meaning of a "block" as a group of bits. Nor does the phrase necessarily exclude a single byte from being a "block" of data within the meaning of the patent. The sentence in question merely gives examples of the types of groups of bits constituting data blocks that can be counted.

To the extent that the defendants contend that a block counter would not be necessary to count a single byte, and that a single byte therefore does not constitute a block of data, that argument is unconvincing. A block counter is not recited in the claims. Instead, block counters

are discussed in the specification as a mechanism for determining when the predetermined number of blocks has been reached for purposes of changing the key value in the encryption system. The fact that a counter would not be necessary in the case in which the interval is one block/byte (because counting to one does not require a "counter"), does not mean that the "predetermined number" of blocks interval cannot be one or that the block of data must be more than one byte.

Relying on the prosecution history of the '730 patent, the defendants argue that when the applicant responded to a rejection by combining original independent claim 8 with original dependent claim 9 to make what ultimately became issued claim 1, the applicant limited his claim to a particular species of data consisting of a sequence of blocks. The effect of the amendment, according to the defendants, was to require that the "blocks" be more than a single byte in length. That argument is unpersuasive. While the prosecution history suggests that the examiner intended to confine the applicant to a method in which the transmitted data consisted of a sequence of blocks, there is nothing in the prosecution history that indicates the "blocks" could not be bytes.

The Court therefore construes the term "block," as used in the phrases "data comprising a sequence of blocks" and "a predetermined number of said blocks," to mean "**a group of bits, such as a character, word, or other unit of data,**" without any requirement that the "block" consist of more than a single byte. That construction is consistent with the court's constructions in *TQP Development, LLC v. Merrill Lynch & Co.*, No. 2:08-cv-471, Dkt. No. 383, at 9; *TQP Development, LLC v. 1-800-Flowers.com, Inc.*, 2:11-cv-00248, Dkt. No. 226, at 39; and *TQP Development, LLC v. Wells Fargo & Co.*, 2:12-cv-61, Dkt. No. 187, at 32.

### 3. "Predetermined"

The defendants next argue that the term "predetermined," as used in the claim limitations "predetermined characteristic of the data" and "predetermined number of said blocks," means something that is determined before any communication over the communication link, but is not an inherent property of the encryption or key-generation algorithm. TQP interprets the term "predetermined" to mean simply "determined before any communication of a sequence of encrypted blocks."

Once again, there is no textual basis in the patent for the additional requirement that the "predetermined" characteristic or number not be an inherent property of the encryption or key-generation algorithm. The reason that the characteristic of the data or number of blocks must be predetermined is so that the transmitter and receiver can reliably remain in synchronism. That purpose is satisfied without regard to the source of the predetermined number of blocks or the size of the predetermined number.

The defendants argue that the prosecution history of the '730 patent demonstrates that the applicant disclaimed prior art "stream ciphers," encryption systems that use a new key value for each block of data, when the applicant amended the claims in light of a rejection of the original claims under 35 U.S.C. § 102. The examiner, however, did not clearly explain why the original claims were anticipated by the prior art or why the combination of original independent claim 8 and original dependent claim 9, resulting in issued independent claim 1, would solve the section 102 problem. Nor is the Court able to infer that stream ciphers were disclaimed by the applicant based on the nature of the prior art referenced in the prosecution history.

The Court therefore construes the term **"predetermined" to mean "determined before any communication of a sequence of encrypted blocks."** That construction is consistent with the court's constructions in *TQP Development, LLC v. 1-800-Flowers.com, Inc.*, 2:11-cv-00248, Dkt. No. 226, at 34; and *TQP Development, LLC v. Wells Fargo & Co.*, 2:12-cv-61, Dkt. No. 187, at 15.

### 4. "Based on Said Seed Value" / "Seed Value"

The parties dispute the meaning of the phrase "based on said seed value" and the terms "seed value," as used in the claim limitation "generating a first sequence of pseudo-random key values based on said seed value at said transmitter." At the claim construction hearing on February 7, 2014, the parties narrowed their disagreement somewhat, although they were not able to reach full agreement on the meaning of the terms. TQP took the position that the phrase "based on said seed value" should either have no construction at all or should be construed to mean "based exclusively on said seed value, meaning that the seed value is the only value used to initialize the generating of the pseudo-random key value." The defendants took the position that the phrase should be construed to mean "based on said seed value, meaning the only external value that initializes the generating of the pseudo-random key value." At the February 7 hearing the defendants agreed to the use of the language "used to initialize" instead of "that initializes," but the parties could not agree on whether the construction should include the term "external" as used in the defendants' proposal.

The Court is able to discern very little practical difference between the two constructions. The plaintiffs are concerned that the term "external" in the defendants' proposed definition could be confusing to the jury and is not supported by the patent. The patent, however, makes clear

that the content of any sequences of keys is predetermined by only two variables: "(1) the internal makeup of the generator 23 and . . . (2) a supplied random number seed value which initializes the generator 23." '730 patent, col. 3, ll. 29-33. Therefore, because the seed value is the only one of those two variables that is external to the pseudo-random number generator, it is necessarily the only external value that is used by the pseudo-random number generator. Accordingly, plaintiff's argument that the term "external" should be excluded from the construction is not supported by the specification.

The Court agrees with the defendants and construes the term "based on said seed value" to mean that **"the seed value is the only external value used to initialize the generating of the pseudo-random key values."** The term "seed value" itself is construed to have its plain meaning, consistent with the court's constructions in *TQP Development, LLC v. 1-800-Flowers.com, Inc.*, 2:11-cv-00248, Dkt. No. 226, at 12; and *TQP Development, LLC v. Wells Fargo & Co.*, 2:12-cv-61, Dkt. No. 187, at 23.

It is so ORDERED.

SIGNED this 11th day of February, 2014.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE